| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | UNITED STATES DISTRICT COURT |
| 5 | FOR THE NORTHERN DISTRICT OF CALIFORNIA |
| 6 | OAKLAND DIVISION |

| | | |
|---|---|---|
| 7 | REX G. CHASE, an individual, | Case No: C 10-3066 SBA |
| 8 | Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING REQUEST FOR SANCTIONS** |
| 9 | vs. | |
| 10 | | |
| 11 | SETON MEDICAL CENTER, a California Corporation, DAUGHTERS OF CHARITY HEALTH SYSTEM, a California Corporation, DAUGHTERS OF CHARITY OF ST. VINCENT DE PAUL PROVINCE OF THE WEST, | |
| 12 | | |
| 13 | | |
| 14 | Defendants. | |
| 15 | | |

Plaintiff Rex G. Chase, the former Chief Executive Officer ("CEO") of Seton Medical Center ("Seton"), filed the instant action in state court against Seton and related entities Daughters of Charity Health System and Daughters of Charity of St. Vincent de Paul Province of the West (collectively "Defendants") based on their alleged breach of a settlement agreement entered into by the parties in 1989. Defendants removed the action on the ground that Plaintiff's causes of action are preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). The parties are presently before the Court on Plaintiff's Motion to Remand Action to State Court and for Attorneys' Fees. Dkt. 11. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to remand and DENIES the request for attorneys' fees. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.     **BACKGROUND**

Plaintiff worked at a Seton's hospital located in Daly City, California, as the company's CEO from March 1, 1969 until April 30, 1985. Compl. Ex. 1 ¶ 1.1, Dkt. 1 at 36. At some point, Seton terminated Plaintiff's employment, prompting him to file a wrongful termination lawsuit against Defendants. Id. The parties reached a settlement, which was memorialized in a written Settlement Agreement and Mutual Release Agreement ("Settlement Agreement") on May 19, 1989. Id. ¶ 10.

The terms of the settlement were set forth in a letter, dated May 15, 1989, which was attached as Exhibit A to Settlement Agreement and incorporated therein by reference. Id. ¶ 11. Under the terms of the settlement, Seton agreed to pay Plaintiff retirement compensation in accordance with the terms of an Executive Incentive Plan, effective May 1, 1987. Id. As part of such payments, Plaintiff is entitled to receive an annual "lump sum" cost of living adjustment ("COLA"). Id. ¶ 12. In addition, Seton agreed to reimburse Plaintiff for certain costs incurred for health care. Id. ¶ 13.

From 1989 through 2008, Seton complied with its obligations under the Settlement Agreement and paid Plaintiff his COLA in January of each year. Id. ¶ 14. However, in September 2008, Seton ceased reimbursing Plaintiff for his medical expenses. Id. ¶ 16. Plaintiff attempted to discuss the matter with Seton's CEO and President, Loraine Auerbach, who largely ignored his calls. Id. ¶¶ 17-18. Thereafter, Seton failed to pay Plaintiff his annual COLA adjustment, which was due on January 1, 2009. Id. ¶ 20. On January 12, 2009, Plaintiff sent Seton "courtesy invoices" as a reminder that he was owed $9,762.56 in medical reimbursements and $113,420.62 for his annual COLA. Id. He sent Seton another reminder notice on February 1, 2009. Id. ¶ 21. Seton eventually paid Plaintiff $113,420.62 for its COLA obligation, over a month after it was due. Id. ¶ 22. Plaintiff claims that Seton's alleged pattern of delay is intended to coerce him to agree to modifications to the 1989 Settlement Agreement. Id. ¶ 23.

On June 7, 2010, Plaintiff filed suit in San Mateo County Superior Court against Defendants, alleging four causes of action for: (1) Elder Financial Abuse; (2) Breach of

Written Contract; (3) Breach of Fiduciary Duty; and (4) Declaratory Relief.  On July 13, 2010, Seton removed the action to this Court on the ground that Plaintiff's causes of action are preempted by ERISA.  Plaintiff now moves the remand the action on the ground that his claims are not preempted and that there is no other basis for federal jurisdiction.  He also seeks an award of attorneys' fees under 28 U.S.C. § 1447(c).

## II.   LEGAL STANDARD

"A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court." In re NOS Commc'ns, MDL No. 1357, 495 F.3d 1052, 1057 (9th Cir. 2007) (citing 28 U.S.C. § 1441(a), (b)).  Under § 1441(b), an action may be removed if the complaint alleges "a claim or right arising under the Constitution, treaties or laws of the United States . . . ."  28 U.S.C. § 1441(b).  There is a "strong presumption" against removal jurisdiction, and the party seeking removal always has the burden of establishing that removal is proper.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  A district court must therefore remand a case to state court "if at any time before the final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c); Gaus, 980 F.2d at 566.  "[R]emoval statutes are strictly construed against removal." Luther v. Countrywide Home Loans Servicing, LP, 533 F.3d 1031, 1034 (9th Cir. 2008).  As such, any doubts regarding the propriety of the removal favor remanding a case.  See Gaus, 980 F.2d at 566.

## III.   DISCUSSION

### A.   PREEMPTION

"[T]he plaintiff is 'the master of his complaint' and may 'avoid federal jurisdiction by relying exclusively on state law.'" Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir. 2000)).  Nonetheless, "there exists a handful of extraordinary situations where even a well-pleaded state law complaint will be deemed to arise under federal law for jurisdictional purposes." Hall v. N. Am. Van Lines, Inc., 476 F.3d 683, 687 (9th Cir. 2007) (internal quotation marks and citation omitted).  "Under the 'artful pleading'

doctrine, a well-pleaded state law claim presents a federal question when a federal statute has completely preempted that particular area of law." Id.  When a federal statute "completely preempts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).

ERISA expressly provides for two types of preemption: "complete preemption" under ERISA § 502(a), 29 U.S.C. § 1132(a); and "conflict preemption" under ERISA § 514(a), 29 U.S.C. § 1144(a). Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 944-45 (9th Cir. 2009).  Complete preemption applies where a complaint asserts a state law cause of action that falls within the scope of one of the civil enforcement provisions of ERISA § 502(a).  See Toumajian v. Frailey, 135 F.3d 648, 654 (9th Cir. 1998).  "Complete preemption under § 502(a) is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim."  Id. (internal quotations and brackets omitted).  In contrast, the conflict preemption provision of ERISA preempts state laws "insofar as they ... relate to any employee benefit plan."  29 U.S.C. § 1144(a) (emphasis added).  Only complete preemption provides a basis for federal jurisdiction and removal.  Marin Gen. Hosp., 581 F.3d at 945-46.

Defendants rely on ERISA's complete preemption provision as a basis for removal jurisdiction.  Notice of Removal at 2.  To determine whether a state law cause of action is completely preempted by ERISA, the Court applies the two-prong test set forth by the Supreme Court in Aetna Health Inc. v. Davila, 542 U.S. 200 (2004).  See Marin General Hosp., 581 F.3d at 946. "Under Davila, a state-law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions." Id. (quoting in part Davila, 542 U.S. at 210) (internal quotations and brackets omitted).  ERISA § 502(a) authorizes a "participant or beneficiary" of an

1  ERISA-governed plan to bring a civil action to, inter alia, "to recover benefits due to him
2  under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his
3  rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B).

4      The gravamen of Defendants' opposition to the motion to remand is that the
5  Settlement Agreement, including the May 15, 1989 Letter which it incorporates by
6  reference, constitutes a "plan" subject to ERISA. "ERISA governs two types of employee
7  benefit plans: (1) 'pension' benefit plans and (2) 'welfare' benefit plans." Peralta v.
8  Hispanic Business, Inc., 419 F.3d 1064, 1069 n.5 (9th Cir. 2005) (citing 29 U.S.C. §
9  1002(1)-(2)). An "employee pension benefit plan" is defined as "any plan, fund, or
10 program . . . established or maintained by an employer or by an employee organization, or
11 by both, to the extent that by its express terms or as a result of surrounding circumstances
12 such plan, fund, or program—[¶] . . . provides retirement income to employees . . . ." 29
13 U.S.C. § 1002(2)(A). ERISA defines an "employee welfare benefit plan" as "any plan,
14 fund, or program ... established or maintained by an employer or by an employee
15 organization, or by both, to the extent that such plan, fund, or program was established or is
16 maintained for the purpose of providing for its participants or their beneficiaries, through
17 the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or
18 benefits . . . ." 29 U.S.C. § 1002(1).

19     Here, Defendants posit that the Settlement Agreement is an ERISA "pension plan"
20 because it provides retirement income to Plaintiff in accordance with a formula outlined in
21 the May 15, 1989 Letter. Defs.' Opp'n at 8, Dkt. 14. They similarly allege that the
22 Settlement Agreement is an ERISA "benefit plan" by virtue of its obligation to reimburse
23 him for certain medical expenses. Id. at 8-9. However, Defendants' legally unsupported
24 arguments are foreclosed by the Ninth Circuit's decision in Graham v. Balcor Co., 146 F.3d
25 1052 (9th Cir. 1998), which held that claims to enforce a settlement agreement entered into
26 between a single employee and his or her employer are not preempted, even if such claims
27 seek to compel the provision of employee benefits required under the agreement. Id. at
28 1055.

1  In <u>Graham</u>, the plaintiff entered into a settlement agreement to waive her
2  discrimination and other employment-related claims in exchange for her employer's
3  promise to provide her with benefits under the company's employee benefits plan for as
4  long as she remained disabled. <u>Id.</u> at 1054. After the employer terminated the plaintiff's
5  plan coverage several years later, she filed suit in state court for breach of contract, breach
6  of the implied covenant of good faith and fair dealing and intentional infliction of
7  emotional distress. <u>Id.</u> The employer removed the action, claiming that all of plaintiff's
8  claims were preempted by ERISA. <u>Id.</u> On appeal, the Ninth Circuit held that ERISA does
9  not preempt state law causes of action to enforce the terms of a settlement agreement, even
10 if employee benefits are involved. <u>Id.</u> at 1054-55. The court explained:

> The [parties'] agreement was a settlement of legal claims which does not relate to an employee benefit plan. The intent of ERISA preemption is to establish uniformity in the administration of plans, <u>not in employee-employer settlements which are by necessity individualized</u>. Therefore, <u>we hold that ERISA does not preempt the state claims arising from this legal settlement, the subject matter of which is employee benefits, because it does not implicate the administration of an employee benefit plan</u>.

<u>Id.</u> at 1055 (emphasis added). The court highlighted the fact that the settlement agreement "only concerns one employee, not the entire plan," and as such, did not trigger ERISA preemption. <u>Id.</u> Here, resolution of Plaintiff's causes of action does not involve the administration of an ERISA plan. Rather, Plaintiff merely seeks to compel Defendants to comply with the terms of a private Settlement Agreement entered into by the parties over twenty years ago. The claims resolved through that agreement arose from Plaintiff's termination, as opposed to the administration of any ERISA plans. Compl. Ex. 1 ¶ 1, Dkt. 1 at 36-37.

Defendants attempt to distinguish <u>Graham</u> by arguing that the settlement agreement in that case simply required the continuation of coverage under a <u>preexisting</u> plan, whereas in this case, the Settlement Agreement <u>is itself</u> the ERISA-governed plan. Defs.' Opp'n at

15.[1]  Defendants cite no relevant decisional authority to support their contention that a private settlement agreement resolving the dispute of an individual employee can be construed as an employee benefit or pension plan.  Moreover, Defendants' interpretation is contravened by the express terms of the Settlement Agreement, which provides that, "This Agreement shall be construed by the laws of the State of California."  Compl. Ex. 1 ¶ 11.2, Dkt. 1 at 42.  Had the parties intended that the Settlement Agreement, in fact, constitute an ERISA-governed plan, they obviously would not have specified that California law controls its construction.

Defendants also seem to suggest that Graham should not be followed because it was decided prior to Davila.  Defs.' Opp'n at 15.  However, neither Davila nor its progeny overrules or otherwise undermines the holding of Graham.  The Court finds that Graham remains good law and is germane to the instant motion.  See Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").

### B. ATTORNEYS' FEES

Plaintiff requests that the Court award attorneys' fees and expenses incurred in filing the present motion to remand.  Under 28 U.S.C. § 1447(c), a district court *may* "require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal."  District courts have wide discretion over whether to award costs or fees.  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  Although Defendant's arguments have not proven persuasive, the Court concludes that their removal was not

---

[1] In passing, Defendants cites Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1377 (9th Cir. 1994) for the proposition that virtually any employment that provides for the payment of some type of deferred compensation can qualify as a pension plan.  Defs.' Opp'n at 8.  Modzelewski involved salary continuation agreements between a savings and loan association and its officers.  In contrast, the Settlement Agreement involves an agreement between a single employee and his employer to resolve claims asserted in a lawsuit.  An agreement involving only one employee "does not trigger preemption."  Graham, 146 F.3d at 1055.

frivolous nor was it motivated by bad faith.  The Court therefore declines to exercise its discretion to award fees and costs to Plaintiff.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Pursuant to 28 U.S.C. § 1447(c), Plaintiff's motion to remand is GRANTED. The instant action is REMANDED to San Mateo Superior Court forthwith.

2. Plaintiff's motion for an award of fees and costs is DENIED.

3. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  November 1, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge